IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA KEISER, | : | Case No. 4:13-cv-00159 |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| CONAGRA FOODS, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
October 27, 2014

Pending before this Court are two Motions for Summary Judgment on the

Amended Complaint (ECF No. 14), one filed by Plaintiff Linda Keiser (ECF No.

27) and the other filed by Defendant ConAgra Foods, Inc. (ECF No. 29).

Plaintiff's Amended Complaint seeks a reversal of the decision by the Defendant to

deny benefits allegedly owed to her as the beneficiary under her husband's

retirement plan, pursuant to § 501(a)(1)(B) of the Employee Retirement Income

Security Act, 29 U.S.C. § 1001, *et seq.* (hereinafter, "ERISA").

After Defendant filed an Answer with affirmative defenses (ECF No. 19)

and discovery was concluded, the parties simultaneously filed Motions for

Summary Judgment on February 7, 2014 (ECF Nos. 27 and 29), both asserting that

they are entitled to summary judgment as a matter of law on Plaintiff's Amended

Complaint.  Pl.'s. Mot. Summ. J., Feb. 7, 2014, ECF No. 27; Def.'s Mot. Summ. J.,

Feb. 7, 2014, ECF No. 29.  The matter has been fully briefed and is now ripe for

disposition.

    In accordance with the following reasoning, Defendant's Motion for

Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is

denied.  Plaintiff's claim for retirement benefits under ERISA § 502(a)(1)(B), 29

U.S.C. § 1001, *et seq.*, is dismissed.

## I. BACKGROUND

    Plaintiff Linda Keiser was married to Marlin Keiser, a former employee of

Defendant ConAgra Foods, Inc.  Def.'s Statement of Facts ¶ 2, February 7, 2014,

ECF No. 30 (hereinafter "Def.'s SOF").  By correspondence dated August 20,

2010, Defendant notified Marlin Keiser that he was entitled to a benefit from the

IHF coordinated Bargaining Pension Plan (hereinafter the "Plan").  Pl.'s Statement

of Facts ¶ 2, Ex. A, at 176, February 7, 2014, ECF No. 28 (hereinafter "Pl.'s

SOF").  Enclosed with this correspondence was a Benefit Notice and Election

Package (hereinafter the "Pension Election Documents") prepared by Defendant

which described the options available to Mr. Keiser under the Plan and required

that he make a pension election within thirty days of receipt of the packet.  Pl.'s

SOF ¶ 3, Ex. A, at 176-98.  The Pension Election Documents further included a

2

document pertaining to "Information for Spouses" in order to assist employees in understanding the impact on their spouses of choosing each particular option. Pl.'s SOF ¶ 10, Ex. A, at 184-86.  In addition to the Pension Election Documents, Mr. Keiser was provided a copy of the Summary Plan Description (hereinafter the "SPD"), which is a statutorily mandated summary of the Plan that must contain certain categories of enumerated information. Pl.'s SOF ¶ 15-16, Ex. A, at 110-36; ERISA § 102.

The Plan is a long document which describes the employees' retirement options in detail.  Section 6.5 of the Plan describes the Refund Option, which is the option at issue in this case.  It says that a participant may elect to receive a live annuity until his Normal Retirement Date (hereinafter his "NRD").  Then, at his NRD, the participant can: (1) continue to receive the same life annuity; (2) receive a reduced life annuity for his life and then at his death his beneficiary will receive the Initial Death Benefit[1] , minus payments the participant received during his lifetime; or (3) he can receive a single lump sum payment equal to the Initial Death Benefit.  Def.'s SOF ¶ 6, Ex. A, at 32-33. This option was to take effect on the participant's NRD, which according to Section 2.20 of the Plan is the "first day of

---

[1] The Initial Death Benefit is a single lump sum payment which equals the sum of the payments that would be made to the participant starting at age 65 and for the rest of the participant's life, based on his average life expectancy.

the calendar month coincident with or next following the Participant's 65th

birthday."  Def.'s SOF ¶ 7, Ex. A, at 11.  Section 6.1 elucidates further on the

Refund Option by stating that, "Prior to the date an Option elected pursuant to

Subsection 6.2, 6.3, 6.4 or 6.5 becomes effective the following conditions will

apply: (A) If the Participant dies prior to the effective date of any Option, the

Option will become void and no benefits will be payable under the Plan."  Def.'s

SOF ¶ 5, Ex. A, at 30.

The SPD that was provided to Mr. Keiser was generally consistent with the

language and meaning of the Refund Option as described in the Plan; however, it

made no mention of whether benefits would accrue to the participant's beneficiary

in the event the participant died before his NRD. Pl.'s SOF ¶¶ 19-20, Ex. A, at 125.


In contrast, the Pension Election Documents, which were provided to

Plaintiff and her husband to help them understand their options under the Plan,

directly conflicted with the language and meaning of the description of the Refund

Option under the Plan. Pl.'s SOF ¶ 8, Ex. A, at 181.  Unlike the Plan, the Pension

Election Documents stated that if the participant should die before his NRD, the

participant's beneficiary would receive a lump sum payment equal to his Initial

Death Benefit. Pl.'s SOF ¶ 8, Ex. A, at 181.  At the same time, the Pension

Election Documents were explicit in explaining that "this document contains only a summary of the pension payment options available to [the participant] and in the event of any conflict between the official Plan documents and this Explanation of Pension Election form, the Plan document shall govern." Def.'s SOF ¶ 16, Ex. A, at 180-82.

After meeting with Alice Satteson, the human relations representative for the Defendant, Mr. Keiser elected the Refund Option and designated Plaintiff as his beneficiary under the Plan. Pl.'s SOF ¶¶ 22, 25, Ex. A, at 202-15.  As applied to Mr. Keiser, the Refund Option provided for an Initial Death Benefit in the amount of $67,442.31, a monthly payment up to age 65 in the amount of $475.65, and a monthly payment after age 65 in the amount of $450.77. Pl.'s SOF ¶ 23, Ex. A, at 203.

It appears that Plaintiff and her husband relied primarily on the summary Pension Election Documents when they selected the Refund Option under the Plan. It is unclear whether they considered the SPD or the Plan at all in making their decision.  Defendants did pay Mr. Keiser's monthly retirement benefits until his death on December 31, 2010, at the age of 62. Pl.'s SOF ¶ 26-27.

Following Mr. Keiser's death, Plaintiff called the Pension Center to apply for benefits under the Plan. Pl.'s SOF ¶ 29, Ex. B. The Pension Center advised her

that all she would have to do was forward Mr. Keiser's death certificate and a check would be issued to her. Pl.'s SOF ¶ 30, Ex. B.  Plaintiff made numerous calls to the Pension Center and to Defendant's headquarters where she was informed that there were problems processing payment. Pl.'s SOF ¶ 31-37, Ex. B.

On January 27, 2010, Defendant sent a letter to Plaintiff which advised her that no benefits were payable to her under the Refund Option since her husband had passed away before 65, his NRD. Def.'s SOF ¶ 19, Ex. A, at 224.  However, Defendant later sent a superseding letter to Plaintiff on March 11, 2011 which informed her that though no benefits were payable to her under the Refund Option selected by her husband, it would pay her benefits under the default benefit method, the Qualified 50% Joint and Survivor Annuity. Def.'s SOF ¶ 20-21, Ex. A, at 233.  This meant that Plaintiff would be eligible to receive a monthly benefit of $223.30 throughout her lifetime, if she signed and returned the enclosed documents.  Def.'s SOF ¶ 23, Ex. A, at 233.  Plaintiff chose not to sign the documents. Def.'s SOF ¶ 24.

All of the foregoing facts are undisputed by Plaintiff and Defendant. However, the parties dispute the implication of Defendant's March 11, 2011 correspondence with Plaintiff, as well as the intention behind Defendant's modification of the SPD in 2013.

Defendant's March 11, 2011 letter to Plaintiff stated:

> While reviewing Mr. Keiser's paperwork, we determined that the description of the Refund Option inadvertently indicated that the Initial Death Benefit would be payable to his beneficiary if he was to pass away prior to age 65 . . . . As a result, the Plan has made the determination to pay you a monthly recurring benefit as if Mr. Keiser had elected the Qualified 50% Joint and Survivor Annuity at the time of his retirement, which is the Normal Form of Payment for married participants under the Plan.

Def.'s SOF ¶ 21, Ex. A, at 233.  Plaintiff contends that this was an attempt on the part of the Defendant to coerce her into signing modified plan documents in which she would have received a substantially lesser sum, without first notifying the union. Pl.'s Mem. Supp. Summ. J. 3.  Defendant, on the other hand, asserts that rather than attempting to coerce Plaintiff, it was gratuitously offering to pay Plaintiff benefits to which she was not entitled so that she would not be left empty-handed. Def.'s Mem. Opp'n Summ. J. 15.

Additionally, Defendant issued a revised SPD in 2013 which stated, "You should note that if you die before reaching age 65, no further payments will be made; your beneficiary will not receive either a pension or a lump sum payment." Pl.'s SOF ¶ 21, Ex. A, at 153.  Although neither party disputes the that this SPD was in fact issued or the language contained within, they do dispute the significance of its issuance.

It is unclear what argument Plaintiff is making in order to establish the

7

relevance of this modification to the case at bar.  However, Plaintiff appears to imply that because the revised SPD added terms that were not included in the original SPD provided to Mr. Keiser, it was made in bad faith by the Defendant. Pl.'s Mem. Supp. Summ. J. 9.  Defendant, on the other hand, argues that this modification was simply an attempt to clarify the terms of the Plan and could not have been made in bad faith because it accurately portrayed the options available to participants under the Plan. Def.'s Mem. Opp'n Summ. J. 16.

Plaintiff filed her original Complaint with this Court on January 23, 2013, alleging that she was entitled to an Initial Death Benefit under the terms of the Plan in the amount of $67,442.31. ECF No. 1.  Defendant moved to dismiss Plaintiff's Complaint on the grounds that she had not first exhausted her administrative remedies. ECF No. 7.  Soon thereafter, Plaintiff proceeded to assert her claim to the ConAgra Foods Employee Benefits Administrative Committee (hereinafter the "Committee"), to pursue the administrative process under the Plan.  Def.'s SOF ¶ 27, Ex. A, at 165.  On July 30, 2013, the Committee sent a letter to Plaintiff to inform her that her claim had been denied, noting that its decision was consistent with past interpretations of the Refund Option. Def.'s SOF ¶ 31-32, Ex. A, at 247. Subsequently, Plaintiff filed an Amended Complaint and following the conclusion of discovery, Plaintiff and Defendant simultaneously filed Motions for Summary

Judgment, both of which are currently before this Court. ECF Nos. 27, 29.

## II. DISCUSSION

### A. Legal Standards

#### 1.    Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" where it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." *Id.*

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  *Id.* at

331.

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).  Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."  FED. R. CIV. P. 56(e)(2).

In deciding the merits of a party's motion for summary judgment, the

Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

2.    Standard of Review of the Plan Administrator's Decision

29 U.S.C. § 1132(a)(1)(B) [ERISA § 502(a)(1)(B)] creates a civil cause of action for a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." This means that in order to assert a claim under this provision the participant must demonstrate that he has a legally enforceable right to benefits under the plan and that the plan administrator improperly denied those benefits. *See Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citing *Hooven v. Exxon Mobil Corp.*, 465 F.3d 366, 574 (3d Cir. 2006)).

According to the Supreme Court, "a denial of benefits charged under         § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A *de novo* review would require the court to

determine whether the administrator or fiduciary made a correct decision in denying benefits. *See Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Conversely, if the challenged plan expressly grants discretionary authority to the administrator or fiduciary, "[t]rust principles make a deferential standard of review appropriate"; in that case, the standard of review of the district court is 'arbitrary and capricious.' *See Fleisher*, 679 F.3d at 120 (*citing Firestone Tire & Rubber Co.*, 489 U.S. at 101).

"An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (*quoting Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)) (internal quotation marks omitted). Under an arbitrary and capricious standard, courts must defer to the decision of the administrator as long as it is "reasonably consistent with unambiguous plan language." *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001).

In the case at bar, the parties do not dispute that the Plan expressly gave the administrator discretionary authority to interpret the Plan and make eligibility determinations. The Plan states:

> The [Committee] shall have full and complete authority, responsibility, and control over the management, administration and operation of the

12

> Plan and Trust fund, including, but not limited to, the sole and absolute discretion to: (i) construe and interpret the Plan; (ii) decide all questions of eligibility to participate in the Plan; (iii) determine the amount, manner and time of payment of any benefits to any Participant, Beneficiary or other person. . .

Plaintiff agrees that this language within the Plan would ordinarily make an arbitrary and capricious standard of review appropriate.

Plaintiff argues, however, that the Court should apply a heightened standard of review because of certain enumerated procedural irregularities in the handling by Defendant of Plaintiff's administrative claim for benefits.  She cites to *Leonard v. Educators Mut. Life Ins. Co.* for the proposition that a heightened standard of review under ERISA is warranted if there has been procedural irregularity, bias, or unfairness in the review of a claimant's application for benefits. *See Leonard v. Educators Mut. Life Ins. Co.*, 620 F.Supp.2d 654, 670 (E.D.Pa. 2007) (*citing Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir. 2000)).  Examples of such procedural irregularities would include: "(1) the insurer's reversal of its original determintaion without the examination of additional evidence; (2) a self-serving selectivity in the use of evidence; and (3) a bias in decision-making to the benefit of the insurer." *Russell v. Paul Revere Life Ins. Co.*, 148 F.Supp.2d 392, 406 (D.Del. 2001) (interpreting and citing *Pinto*).

Here, Plaintiff argues that there were numerous procedural irregularities in

Defendant's treatment of Plaintiff's administrative claim for benefits.  As stated above, Plaintiff contends that Defendant's modification of the SPD in 2013 was made in bad faith because it added terms that were not included in the SPD provided to Mr. Keiser when he made his plan election.  Further, Plaintiff claims that through its March 11, 2011 letter, which offered to pay Plaintiff benefits under the default plan option, Defendant attempted to "unilaterally [make] the determination to pay her benefits under a new plan which would pay her a substantially lesser sum.  Finally, Plaintiff argues that Defendant based its decision to deny benefits on "self-serving selectivity in the use of evidence, namely the Plan Document alone, even though they had the numerous summary documents for review and consideration."

In response, Defendant first argues that the line of cases relied upon by Plaintiff, specifically *Leonard* and *Pinto*, have been overruled by the Supreme Court in *Met. Life Ins. Co. v. Glenn* and therefore those cases are no longer good law.  554 U.S. 105 (2008).  Defendant argues that under *Glenn*, "in applying the abuse of discretion standard[2], a conflict of interest or procedural irregularity is just 'one factor to be considered.' " *Glenn*, 554 U.S. at 117-19.  According to

---

[2] "[I]n the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical." *Fleisher*, 679 F.3d at 121 n.2.

Defendant, this means that any procedural irregularity does not automatically change the standard of review; it is to be considered only as a "tie-breaking factor" in the event the case is close. *Fleisher*, 679 F.2d at 122 n.3.  Defendant further argues because the Committee's interpretation of the Plan was correct, the issue is not close and so does not require a tie-breaking factor; as such, Plaintiff's allegations of procedural irregularity are irrelevant.

In the alternative, Defendant argues that none of the procedural irregularities asserted by Plaintiff affected the Committee's decision, and that in order to be relevant, an alleged procedural irregularity must have affected the administration of the claim.  Moreover, Defendant disputes the significance of the March 11, 2011 letter which was sent to Plaintiff, claiming that rather than an attempt to unilaterally reduce her benefits, the letter was merely informing her that she would not receive benefits under the Refund Option and instead offering to pay her under a different option, "so that she would not be left empty-handed."  In addition, Defendant claims that the 2013 modification of the SPD cannot be considered a procedural irregularity because it accurately described the Refund Option that was available through the Plan when Mr. Keiser selected his pension plan.

It is the Court's view that *Glenn* controls in the present situation and any procedural irregularity will be treated as just one factor in deciding whether

Defendant abused its discretion, rather than automatically raising the standard of review. *Glenn* explicitly deals only with conflicts of interest arising from the dual role of an entity as an ERISA plan administrator and payer of plan benefits, holding that a conflict of interest is only one factor to be considered in an abuse of discretion analysis. *See Glenn*, 554 U.S. at 105-7. However, the case impliedly extended that holding to procedural irregularities as well through its consideration in the same manner of certain factors which "suggested procedural unreasonableness." *Id.* at 118 (determining whether MetLife abused its discretion by considering various factors including that "MetLife had emphasized a certain medical report that favored a denial of benefits, had deemphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence."). Moreover, subsequent cases have explicitly held that procedural irregularities are treated similarly to conflicts of interests in this regard. *See, e.g., Brangman v. AstraZeneca, LP*, 952 F.Supp.2d 728, 738 (E.D.Pa. 2013) ("Just as structural conflicts factor into a court's review, so too do procedural irregularities or other evidence of bias."); *see also Shvartsman v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson*, No. 11-03643, 2012 WL 2118126 at * 11 (D.N.J. June 11, 2012) (finding that evidence of procedural

16

abnormalities or other bias is to be considered a factor like a conflict of interest is considered as stated in *Glenn*).

That being said, this Court must still inquire into whether any of the Defendant's actions would constitute procedural irregularities which must be considered as factors in the Court's decision as to whether Defendant acted in an arbitrary and capricious manner.  In doing so on these motions for summary judgment, this Court is only allowed to determine matters of law; it is not entitled to inquire into or decide factual disputes. *See Anderson*, 477 U.S. at 249.

First, Plaintiff claims that Defendant acted in bad faith by modifying the SPD in 2013 to add an additional phrase which makes benefits unavailable to the beneficiary in the event the participant died before his NRD.  Even accepting Plaintiff's interpretation of Defendant's motive, this would not be a procedural irregularity because it has no bearing on the handling of Plaintiff's administrative claim. *Kosiba v. Merck & Co.*, 384 F.3d 58, 66 (3d Cir. 2004) ("Our precedents establish at least one more cause for heightened review: demonstrated procedural irregularity, bias, or unfairness *in the review of the claimant's application for benefits*.") (emphasis added).  Plaintiff's claim was decided entirely on the terms of the Plan document, and the Committee actually considered but disregarded the language of both the Pension Election Documents and the original SPD.  The

Committee did not consider the modified SPD in its decision, nor should it have, given that a document issued two years after Mr. Keiser's pension election is irrelevant as to whether benefits should have been available to Plaintiff.

Second, Plaintiff argues that the letter she received from Defendant was intended to coerce her into signing modified plan documents which would have reduced the amount of money available to her substantially.  If Defendant was in fact attempting to coerce Plaintiff into changing her plan and receiving a smaller benefit as she claims, this could amount to a procedural irregularity.  Even though Plaintiff never agreed to the offer sent by Defendant, she could have a credible argument that Defendant's denial of Plaintiff's claim was in retaliation for her refusal to agree to the new plan.

Finally, Plaintiff briefly argues that Defendant used only self-serving evidence in denying Plaintiff's claim because it considered only the Plan and not the other summary documents from which Mr. Keiser based his pension election. Given the facts on the record, this would not amount to a procedural irregularity. The record clearly shows that Defendant did not refuse to consider the summary documents; it simply made the determination that the Plan controlled over any other conflicting documents.  Further, this is not the type of situation contemplated by *Pinto* when it described the irregularity and unfairness of considering only self-

serving evidence.  In *Pinto*, the plan administrator credited one part of the advice of a treating doctor but not his other advice; the court determined that it was inconsistent treatment of the same authority in two separate instances.  214 F.3d at 394.  Further, the plan administrator in *Pinto* failed to explain its rejection of the doctor's advice.  *Id.* at 393-94.

Here, when the Defendant made its decision, it sent Plaintiff a letter that provided significant detail as to why her claim for benefits was denied.  In the letter, Defendant specifically addressed the Pension Election Documents and explained why it believed that contrary Plan language controls over the language contained in these summary documents.  Because it is clear that a self-serving selectivity of evidence was not present here, the Court will not consider it as a factor in weighing the standard of review.

Because of the single foregoing factual dispute, for the purposes of this analysis the Court will apply the arbitrary and capricious standard of review and consider Plaintiff's interpretation of the letter as a factor in its determination as to whether Defendant abused its discretion in denying Plaintiff's claim for benefits.

## B. Claim for Benefits Under ERISA § 502(a)(1)(B)

Having found that the arbitrary and capricious standard of review applies, and taking into account certain potential procedural irregularities on the part of the

Defendant, the Court now turns to Plaintiff's claim for benefits under ERISA §
501(a)(1)(B).

Plaintiff bases her claim on the Pension Election Documents, which were
summary documents given to employees by the Defendant purporting to synthesize
the information contained in the Plan. She argues that the Pension Election
Documents should control over the Plan, given the contradictory language and her
reliance on the summary documents. In doing so, she relies on a decision of the
United States Court of Appeals for the Third Circuit, *Burstein v. Ret. Account Plan
for Emps. of Allegheny Heath Educ. & Research Found.*, 334 F.3d 365 (3d Cir.
2003), which, in a similar factual setting, unambiguously held that where the
language in an SPD conflicts with the plan language, the SPD will control.

Conversely, Defendant rests its case on the Plan language, citing to a recent
Supreme Court case, *Cigna Corp. v. Amara*, -- U.S. --, 131 S. Ct. 1866 (2011),
which, *inter alia*, held that disclosures set forth in the SPD could not be enforced
pursuant to ERISA § 502(a)(1)(B) as terms of the plan itself. In response, Plaintiff
contends that *Cigna* is inapplicable to the case at bar because in that decision the
Supreme Court was not dealing with summary plan documents which contained
conflicting terms as in the present matter. Rather, she argues, the Supreme Court
was deciding whether the district court had applied the correct legal standard in

determining whether notice violations regarding changes to the Plan itself had caused its employees sufficient injury to warrant relief.

Plaintiff is correct in stating that *Burstein* was factually similar to the current situation.  In that case, former employees of a then-bankrupt company brought an action pursuant to ERISA seeking to recover benefits under their retirement plan. The SPD given to the employees and the Plan Document contained directly conflicting terms regarding how and when the employee's retirement account was funded and therefore directly impacted how much money the employees received when the employer went bankrupt.  The Third Circuit held that the SPD would govern over contradictory or conflicting terms in the Plan because "[i]t is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complicated document, and then proclaim that any inconsistencies will be governed by the plan.  Unfairness will flow to the employee for reasonably relying on the summary booklet." *Id.* at 378 (quoting *McKnight v. S. Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985)).

However, *Burstein* is no longer good law on the issue of which document controls the availability of benefits, given the Supreme Court's ensuing decision in *Cigna.  Cigna* involved a situation where the company was converting its traditional defined benefit pension plan into a "cash balance" retirement plan and

21

the plaintiffs were employees who were negatively affected by this conversion. *See Amara v. Cigna Corp.*, 534 F.Supp.2d 288, 295 (D.Conn. 2008).  Among other things, they argued that the SPD issued to describe the new cash balance plan was misleading by failing to inform employees that under the new plan a participant's opening balance would not always be equivalent to the value of the participant's currently accrued benefit; it did, however, tell participants that "[i]f you participated in the Pension Plan before [the conversion date], your old plan benefits were converted to an opening account balance in this Plan.  Your final Plan benefits cannot be less than your old plan benefits [before the date of conversion]." *Id.* at 303, 310-11.  The district court ultimately awarded benefits to the employees based on a different legal theory, namely, that Cigna had violated its disclosure obligations and in granting legal relief the court reformed the plan to conform to the explanations in the SPD.  *See Cigna*, 131 S.Ct. at 1868.

However, in rejecting the primary basis for the district court's decision, the Supreme Court simultaneously rejected the theory that the SPD creates enforceable plan terms which prevail over Plan language.  *See id.*  ("Nor can the Court accept the Solicitor General's alternative rationale: that the District Court enforced the summary plan descriptions and that they are plan terms.  That reading cannot be squared with ERISA § 102(a), which obliges plan administrators to furnish

22

summary plan descriptions, but does not suggest that information about the plan provided by those disclosures is itself part of the plan."). In so doing, the court relied on the distinction, whether theoretical or actual, between the plan administrator and the plan sponsor, stating that "there is no reason to believe that the statute intends to mix the responsibilities by giving the administrator the power to set plan terms indirectly in the summaries. . . ." *Id.* at 1869.

Though *Cigna* did not involve identical facts as here or in *Burstein*, its holding was comprehensive regarding any situation in which a plaintiff argues for benefits based on language in the SPD that are not explicitly granted by the plan. Ultimately, the Plan language controls and conflicting, contradictory, or misleading terms in an SPD (or other summary document) cannot be incorporated into the terms of the Plan itself. As such, this Court cannot say that the Committee abused its discretion, even taking into account the potential procedural irregularities, when it acted in accordance with governing law.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied. Plaintiff's claim for retirement benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1001, *et seq.*, is hereby dismissed.

An appropriate Order follows.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge